Travis N. Barrick, #9257
GALLIAN, WILCOX, WELKER
OLSON & BECKSTROM, L.C.
540 E. St. Louis Avenue
Las Vegas, Nevada 89104
Telephone: (702) 892-3500
Facsimile: (702) 386-1946
tbarrick@gwwo.com

James W. Claflin, Jr. #9531
CLAFLIN LAW LTD.
3753 Howard Hughes Parkway, Suite 200
Las Vegas, Nevada 89169
Telephone: (702) 564-2523
Facsimile: (702) 800-5709
Admin@ClafLaw.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| RICHARD E. EMEL,<br><br>Plaintiff,<br><br>vs.<br><br>BERNARD BROKER, an Individual;<br>GARY JAY BIRKAHN, an Individual;<br>DEANNE STONEY, an Individual;<br>LAS VEGAS CONVENTION AND<br>VISITORS AUTHORITY, a Public<br>Entity; and<br>DOES 1 through 5,<br><br>Defendants. | Case No.: 2:12-cv-01658<br><br>**CIVIL RIGHTS COMPLAINT PURSUANT TO THR AMERICANS WITH DISABILITIES ACT, 42 U.S.C. §1983, NRS 41.1395 AND STATE LAW CLAIMS**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff Richard E. Emel, by and through his counsel Travis N. Barrick, Esq., of GALLIAN, WILCOX, WELKER, OLSON & BECKSTROM, LC, and James W. Claflin, Jr., Esq., of CLAFLIN LAW LTD., alleges for his Complaint pursuant to (i) Title II and Title III of the Americans with Disabilities Act, (ii) 42 U.S.C. §1983 (civil rights violations), (iii) Nevada Revised Statutes ("NRS") 41.1395 (civil claims) and (iv) Nevada common-law tort claims

- 1 -

(false arrest, battery and intentional infliction of emotional distress), against defendants Bernard Broker, Gary Jay Birkahn, Deanne Stoney, Las Vegas Convention and Visitors Authority, and Doe Defendants 1 through 5 as follows.

## I.   JURISDICTION

1. At all relevant times, Plaintiff Richard E. Emel was an individual residing in Shelley, Idaho.

2. Mr. Emel is informed and believes that at all relevant times Defendant Bernard Broker ("Defendant Broker") was a security officer who was employed by Defendant Las Vegas Convention and Visitors Authority ("Defendant LVCVA")  and who acted within the course and scope of his employment.

3. Mr. Emel is informed and believes that at all relevant times Defendant Gary Jay Birkahn ("Defendant Birkahn") was a security officer who was employed by Defendant LVCVA and who acted within the course and scope of his employment.

4. Mr. Emel is informed and believes that at all relevant times Defendant Deanne Stoney ("Defendant Stoney") was the Customer Service Manager employed by Defendant LVCVA and who acted within the course and scope of her employment.

5. Mr. Emel is informed and believes that at all relevant times Defendant LVCVA was a public entity in Clark County, Nevada, located at 3150 Paradise Road in Las Vegas, Nevada and is responsible for the actions of its employees, agents, and representatives while they act within the course and scope of their employment or agency.

6. Because the true names and capacities, whether individual, corporate, associate, governmental, quasi-governmental or otherwise, of Defendant Does 1 through 5 are unknown to Mr. Emel at this time, Mr. Emel sues the Doe Defendants by such fictitious names.  When the true names and capacities of the Doe Defendants have been ascertained, Mr. Emel will amend

this Complaint accordingly.

7. Defendant Broker, Defendant Birkahn, Defendant Stoney, Defendant LVCVA and Defendant Does 1 through 5 are sometimes collectively referred to as the Defendants.

8. The acts and omissions of Defendants giving rise to Mr. Emel's claims arose in the State of Nevada.

9. This Court has jurisdiction over Mr. Emel's claims under 42 U.S.C. §1983, 28 U.S.C. §1343(a)(3) and 28 U.S.C. §1331.

10. Venue over Mr. Emel's claims properly lies in this Court under 28 U.S.C. §1391(b).

## II.   FACTUAL ALLEGATIONS.

11. Mr. Emel is a US combat veteran who suffers from service-connected Post-Traumatic Stress Disorder ("PTSD") and who also receives Social Security disability payments.

12. On February 27, 2011 (the "First Day"), Mr. Emel, accompanied by his service animal, Kole (on a leash) and his friend, Robert Gulden (a US-combat- service-disabled veteran who is not a party to this Action), entered the property of Defendant LVCVA to attend the first day of a three-day trade show (the "Show") being held at the Las Vegas Convention Center (the "Convention Center").  Messrs. Emel and Gulden had previously registered for their admission to the Show and were business invitees of The Nielsen Company, which was the promoter of the Show and the lessee of space for the Show at the at the Convention Center and which is not yet a party to this Action.

13. During the morning of the First Day, Mr. Emel was repeatedly approached by various employees, agents or representatives of Defendant LVCVA who requested that Mr. Emel produce a "doctor's note" certifying Kole as a service animal. After finally speaking with someone who appeared to Mr. Emel to be a supervisor regarding Kole's status as a service animal, Defendant LVCVA's employees, agents and representatives had no further contact

with Mr. Emel. For the rest of the First Day, Mr. Emel, Kole and Mr. Gulden attended the Show with no further incident or contact with Defendant LVCVA's employees, agents or representatives.

14. On February 28, 2011 (the "Second Day"), at approximately 10:00 am, upon returning to the Convention Center to continue their attendance at the Show, Mr. Emel, again accompanied by Kole (on a leash) and by Mr. Gulden, was confronted in the parking lot on the west side walkway near the Convention Center by Defendant Broker and Defendant Birkahn, who were each driving a two-wheeled electric personal vehicle manufactured by (and familiarly known as a Segway). Upon Mr. Emel's information and belief, Defendants Broker and Birkahn had been specifically directed by Defendant Stoney to confront Mr. Emel and to obtain written documentation regarding Kole's status as a service animal.

15. As Defendants Broker and Birkahn drove their carts at Mr. Emel, their first statements to Mr. Emel were "that dog cannot come into the convention center." As he continued walking, Mr. Emel responded that because Kole was his service animal, he had the right to bring Kole into the Convention Center and into the Show.

16. Defendant Broker then began acting more verbally and physically aggressive, demanding that Mr. Emel produce "some sort of paperwork" and then more specifically "a doctor's note" for himself and/or for Kole. Mr. Emel responded that "paperwork is not required; he is a service animal". Defendants Broker and Birkahn repeatedly demanded to see Mr. Emel's "paperwork," "doctor's note," or other identification for the dog, "like a harness."

17. As Mr. Emel Continued walking toward the entrance of the Convention Center, Defendants Broker's and Birkahn's verbal and physical aggression toward Mr. Emel and Kole escalated, as each of the security officers started yelling at Mr. Emel: "You are not taking that animal into the building. We will arrest you for trespassing."

18. In response to the naked aggression being shown by Defendants Broker and Birkahn, Mr. Emel stated, "Fuck you. Call the Police" as he walked around them on their Segways. Defendants Broker and Birkahn then began to physically block Mr. Emel's and Kole's progress with their Segways in a criss-cross pattern, that is, by passing rapidly and as close as possible to Mr. Emel and Kole and then stopping directly in the pathway in front of Mr. Emel and Kole. This tactical criss-cross scenario was repeated four or five times over during the next few minutes as Mr. Emel continued to walk toward the entrance of the Convention Center.  During these aggressive maneuvers, Defendant Broker sought to intimidate, harass, and threaten Mr. Emel by saying, "all this is being recorded on video and voice."  Although Defendant Broker appeared to key or open the microphone on his radio several times during this stage of the aggression, neither Defendant Broker nor Defendant Birkahn ever called the 911 police dispatcher or asked their Convention Center security radio dispatcher to do so.

19. Then, when in desperation Mr. Emel attempted to call the police via 911 on his mobile telephone, Defendant Broker drove his Segway over Mr. Emel's right foot, interrupted Mr. Emel's call to the 911 police dispatcher, and disconnected the call. At that point Mr. Emel shouted, "You Mother Fucking Asshole! You ran over my foot!!!"

20. Defendant Broker immediately dismounted his Segway and butted his chest against Mr. Emel's multiple times in the classic fashion of a playground bully seeking to provoke a brawl. Mr. Emel did not retaliate.

21. Defendant Broker next told Mr. Emel that he was under arrest, as several other security guards employed by Defendant LVCVA arrived at the scene.

22. As Mr. Emel was forcibly separated from Kole, Mr. Emel received, but was not permitted to answer, a return mobile telephone call from the 911 police dispatcher after Mr. Emel's call to the police had been interrupted and disconnected by Defendant Broker's attack.

23. While Mr. Emel was being handcuffed behind his back by security officers of Defendant LVCVA, Mr. Emel explained to all present that he had an existing lower back injury and that it would further damage his back if he were to be handcuffed behind his back. Mr. Emel requested that the handcuffs be placed in front of his body, but Defendant Broker, Defendant Birkahn and the other security officers of Defendant LVCVA refused this request. Mr. Emel then asked that two sets of handcuffs be used so as to reduce the twisting and bending backwards that a single pair would cause; this request was likewise refused. Mr. Emel was then led approximately 300 yards to Convention Center Security Office (the "Security Office"), where Defendants Broker and Birkahn continued their verbal and physical aggression toward Mr. Emel.

24. At approximately 11:00 am, two officers from the Las Vegas Metropolitan Police Department ("Metro"), Officer W. Moreno (P#8769) and Officer R. Perkins (P#8747), neither of whom is a party to this Action, arrived at the Security Office of Defendant LVCVA and immediately removed the handcuffs from Mr. Emel's wrists and led Mr. Emel to the Convention Center lunchroom (the "Lunchroom").

25. While Mr. Emel was talking with the Metro officers in the Lunchroom, Defendant Birkahn burst through the closed door, demanding that Mr. Emel remove his boot and provide "evidence" of his personal injuries due to having been run over by the Segway driven by Defendant Broker. Defendant Birkahn also demanded that Mr. Emel show the Metro officers written documentation of Kole's status as a service animal.

26. The Metro officers removed Defendant Birkahn from the Lunchroom and informed him that it is illegal to ask for documentation for evidence of a disability or documentation for a service animal.

///

27. At the conclusion of the meeting with the Metro officers in the Lunchroom, Defendant Broker signed a citation against Mr. Emel for trespassing (NRS 209.200) and battery (NRS 200.471), and Mr. Emel signed a citation against Defendant Broker for battery (NRS 200.471). Mr. Emel was then released from custody .

28. Defendants Broker and Birkahn both signed voluntary statements that indicated that they had been directed by Defendant Stoney to require written documentation from Mr. Emel regarding Kole's status as a service animal.

29. When Mr. Emel arrived at his vehicle in the Convention Center parking lot, he found two severely distressed loved ones: Mr. Gulden, who is himself also a disabled Vietnam combat veteran, and Kole. Mr. Gulden was highly distressed as to (i) his own safety and as to the possibility of being forced to defend criminal charges of some type for simply being present during Mr. Emel's ordeal and for being treated by the Defendants as though he had committed some crime, (ii) his inability to control the now hyper vigilant and distressed service animal Kole, and (iii) Kole's medical status due to the fact that Kole had vomited.

30. Mr. Emel was driven directly by Mr. Gulden to the emergency room of Desert Springs Hospital in Las Vegas, where Mr. Emel was (i) treated for a sprained foot and (ii) prescribed treatment to reduce the swelling and pain medication. In addition to causing harm to Mr. Emel, Defendants Broker's and Birkahn's aggressive actions also caused Kole to go into severe physical and psychological distress.

31. Mr. Emel has required extensive counseling to deal with the violations of his rights and the false arrest committed by the Defendants. In addition, ever since the above-described incident, Kole, who had pre-existing medical conditions, began to experience deterioration in his health.

///

32. On March 21, 2012, criminal charges for trespass and battery were filed against Mr. Emel in Las Vegas Justice Court (Case No. 11M13339X). Mr. Emel was required (i) to undertake several return trips to Las Vegas, along with Mr. Gulden, (ii) to expend extensive effort and funds for attorney fees to prepare his defense against the criminal charges, (iii) to incur expenses for counseling and medical treatment and (iv) to incur veterinarian bills for Kole.

33. On May 14, 2012, moments prior the second scheduled trial date on the matter, the criminal charges were fully dismissed by the deputy District Attorney.

34. On April 23, 2012, Kole was euthanized, due in part to the cumulative stress of the above-described incident.

35. On November 28, 2011, Mr. Emel filed a Complaint with the Nevada Equal Opportunity Commission ("NEOC").

36. On June 8, 2012, the NEOC issued a Right To Sue letter to Mr. Emel.

### III. FIRST CAUSE OF ACTION.
### ADA Violation – against all Defendants

37. Mr. Emel repeats and realleges the allegations in paragraphs 1 through 37, as though fully set forth.

38. Defendant LVCVA is a public entity as defined in 42 USC §12131(1)(B) because it is a "department, agency, special purpose district, or other instrumentality of a State or States or local government."

39. As a public entity, Defendant LVCVA is subject to the terms of the ADA as defined in 42 USC §12132, which prohibits discrimination in public accommodations, including interfering with the right of disabled persons to bring service animals into public accommodations, as set forth in 28 CFR §35.136 ("Title II").

///

40. Defendant LVCVA, in that is operates a commercial facility, is also subject to the terms of the Americans with Disabilities Act (the "ADA") as defined in 42 USC §12181, which prohibits discrimination in public accommodations, including interfering with the right of disabled persons to bring service animals into public accommodations, as set forth in 28 CFR §36.302 ("Title III").

41. 28 CFR §35.136(f) and 28 CFR §36.302(c)(6) provide that Defendant LVCVA "shall not require documentation, such as proof that the animal has been trained to do work or perform tasks for an individual with a disability." The Defendants, individually and collectively, overtly violated this prohibition by detaining Mr. Emel for the express purpose of demanding documentation of Kole's status as a service animal.

42. 28 CFR §35.136(f) and 28 CFR §36.302(c)(6) provide that Defendant LVCVA may only ask two questions: (i) Is the animal required because of disability and (ii) what work the animal has been trained to perform." The Defendants, collectively and individually, violated this restriction when they did not accept Mr. Emel's statement as to part (i) and failed to inquire into part (ii).

43. 28 CFR §35.136(b) and 28 CRF §36.302(c)(2) provide two exceptions which allow a public entity to remove a service animal from the premises only if (1) the animal is out of control and the animal's handler does not take effective action to control it; or (2) the animal is not housebroken. The Defendants had no evidence to invoke and in fact did not attempt to invoke either of these exceptions.

44. 42 USC §12133 provides that the remedies available to Mr. Emel for the DEFENDANTS' violations are those set forth in 29 USC §794, which provide for compensatory damages, along with attorney fees and costs.

///

### IV.   SECOND CAUSE OF ACTION.
### §1983 Violation – against all Defendants

45. Mr. Emel repeats and realleges the allegations in paragraphs 1 through 44, as though fully set forth.

46. Defendants Broker, Birkahn and Stoney, acting under the color of law in their official capacities as security officers for Defendant LVCVA, a public entity, violated Mr. Emel's civil rights under the ADA, as set forth above.

47. As a result of the civil rights violations by the Defendants, Mr. Emel has incurred damages and attorney fees/costs, in an amount to be proven at trial.

48. Defendants Broker, Birkahn and Stoney are not entitled to assert or enjoy the protection of qualified immunity for their unlawful actions because their unlawful actions violated Mr. Emel's clearly established rights under the ADA.

### V.   THIRD CAUSE OF ACTION.
### NRS 41.1395 – against all Defendants

49. Mr. Emel repeats and realleges the allegations in paragraphs 1 through 48, as though fully set forth.

50. Mr. Emel, by virtue of his physical and emotional disabilities, is among that class of persons entitled to the protections of NRS 41.1395.

51. Defendants Broker, Birkahn, Stoney, and LVCVA had cause to know that Mr. Emel was a "vulnerable person," as defined in the statute.

52. Defendants Broker, Birkahn, and LVCVA violated NRS 41.1395(1) when (i) they caused physical injury to Mr. Emel and (ii) they caused Mr. Emel to suffer a loss of money due to his medical costs, his psychiatric treatment costs, and his veterinarian bills for Kole.

53. Defendant Broker violated NRS 41.1395(2) when he recklessly and maliciously caused Mr. Emel to be prosecuted for trespassing and battery.

///

54. As a result, Mr. Emel is entitled (i) to recover two times his actual damages incurred from all Defendants and (ii) to recover his attorney fees from Defendant Broker.

### VI. FOURTH CAUSE OF ACTION.
### False Arrest – against all Defendants

55. Mr. Emel repeats and realleges the allegations in paragraphs 1 through 54, as though fully set forth.

56. Defendants Broker and Birkahn, acting under the color of law in their official capacities as security officers for Defendant LVCVA, a public entity, committed false arrest on the person of Mr. Emel by detaining, arresting, and citing Mr. Emel (i) without probable cause and (ii) in retaliation for the assertion of his rights under the ADA, which is prohibited by 28 CFR §36.206.

57. A lack of training and/or lack of actual knowledge of the ADA deprived Defendants Broker, Birkahn and LVCVA of "reliably trustworthy information" upon which to affect the arrest of Mr. Emel.

58. As a result of the false arrests by Defendants Broker, Birkahn, and LVCVA, Mr. Emel has incurred damages and attorney fees/costs in an amount to be proven at trial.

59. Defendants Broker and Birkahn are not entitled to qualified immunity for their actions because the violations of Mr. Emel's civil rights were clearly established at the time.

### VII. FIFTH CAUSE OF ACTION.
### Battery NRS 200.400 – against Defendant Broker

60. Mr. Emel repeats and realleges the allegations in paragraphs 1 through 59, as though fully set forth.

61. Defendant Broker committed the willful and unlawful use of force or violence on the person of Mr. Emel when he (i) ran over Mr. Emel's right foot and (ii) chest-butted Mr. Emel several times.

62. As a result of the battery by Defendant Broker, Mr. Emel has incurred damages and attorney fees/costs, in an amount to be proven at trial.

## VIII.   SIXTH CAUSE OF ACTION.
### Intentional Infliction of Emotional Distress – against all Defendants

63. Mr. Emel repeats and realleges the allegations in paragraphs 1 through 62, as though fully set forth.

64. Defendants Broker and Birkahn acted intentionally and recklessly in driving their Segways so as (i) to restrain Mr. Emel's lawful movements and (ii) to run over his right foot.

65. Defendants Broker and Birkahn acted intentionally and recklessly (i) in detaining Mr. Emel, (ii) in refusing his request to have the handcuffs loosened or repositioned to avoid injury to his already injured back and (iii) in charging him with trespassing and battery.

66. Defendant Broker's and Birkahn's conduct was extreme and outrageous against a vulnerable person such as Mr. Emel.

67. Defendant Broker's and Birkahn's open, public and notorious conduct was the cause of Mr. Emel's need for extensive psychiatric counseling resulting from their conduct against him as a person and against his service animal, Kole.

68. As a result of the intentional infliction of emotional distress by the Defendants, Mr. Emel has incurred damages and attorney fees/costs, in an amount to be proven at trial.

## IX.   PRAYER

**WHEREFORE**, Mr. Emel seeks judgment in his favor and against the Defendants, and each of them:

(i) for compensatory, general and special damages, in an amount in excess of $500,000.00, as set forth above;

(ii) for punitive damages against Defendants Broker, Birkahn and Stoney, in an amount to be proven at trial;

- 12 -

(iii)    for costs and attorney fees pursuant to 42 U.S.C. 1988; and

(iv)    for such other remedies as the Court deems appropriate.

DATED this 19th day of September, 2012.

| By: __/s/ Travis N. Barrick_____ | By: _/s/ James W. Claflin, Jr._____ |
|---|---|
| Travis N. Barrick, #9257 | James W. Claflin, Jr. #9531 |
| GALLIAN, WILCOX, WELKER, OLSON & BECKSTROM, L.C. | CLAFLIN LAW LTD. |
| 540 E. St. Louis Avenue | 3753 Howard Hughes Parkway, Suite 200 |
| Las Vegas, Nevada 89104 | Las Vegas, Nevada 89169 |
| *Attorneys for Plaintiff* | *Attorneys for Plaintiff* |